IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL GORRIO,<br>*Plaintiff* | :<br>:   CIVIL ACTION<br>: |
| v. | :<br>: |
| CORRECTIONAL OFFICER<br>SHORTER *et al.*,<br>*Defendants* | :<br>:<br>:   No. 23- 4807 |

# MEMORANDUM

PRATTER, J.                                                                                                                                     MAY 13, 2024

Michael Gorrio has now filed a third amended complaint against numerous defendants who are employed at SCI Phoenix. The Court dismisses certain of Mr. Gorrio's claims and directs service of his claims that pass statutory screening.

## BACKGROUND

In November 2023, Mr. Gorrio filed a civil complaint against 33 defendants raising a host of claims based on his placement in the Restricted Housing Unit and other distinct events that occurred at SCI Phoenix where he is currently confined. *Gorrio v. Terra*, Civ. A. No. 23-4366 (E.D. Pa.). Relevant here, the Court screened Mr. Gorrio's complaint and severed certain of his claims into two new lawsuits, including "claims arising from events beginning in August 2023 predicated on [a] 'fight club' allegedly operating on M-Unit, which the Complaint associate[d] with Correctional Officer Shorter and Unit Manager Wychunis," and which serves as the basis for Mr. Gorrio's claims in the instant case. *See Gorrio v. Terra*, No. 23-4366, 2023 WL 8373167, at *6 (E.D. Pa. Dec. 4, 2023). Mr. Gorrio had alleged that he "was stabbed in the head and fractured his left hand" as a result of an altercation with another inmate that he claimed to have started because of the alleged "fight club." *Id.* at *4.

To pursue his claims, Mr. Gorrio was instructed to either pay the applicable fees or move to proceed *in forma pauperis* if he sought to proceed with the claims that were severed into the instant case. In response, he completed the paperwork for proceeding *in forma pauperis* and also reasserted his claims by filing an Amended Complaint against Correctional Officer Shorter and Sergeant Green. In a January 24, 2024 Memorandum and Order, the Court granted Mr. Gorrio leave to proceed *in forma pauperis* and dismissed his Amended Complaint upon statutory screening. The Court dismissed Mr. Gorrio's claims for failure to protect, deliberate indifference to his medical needs, and excessive force for failure to state a claim and dismissed his state claims for lack of subject matter jurisdiction. *Gorrio v. Shorter*, No. 23-4807, 2024 WL 169566, at *4 (E.D. Pa. Jan. 16, 2024).

Mr. Gorrio filed a second amended complaint. *Id.* He then resubmitted the initial complaint the Court had previously screened and severed. Accordingly, the Court struck that pleading and gave Mr. Gorrio an opportunity to file a proper amendment limited to the subject-matter at issue in this case. He returned with the pending Third Amended Complaint.

The Third Amended Complaint names the following defendants in their individual and official capacities: (1) Superintendent Joseph Terra; (2) Correctional Officer Shorter; (3) Correctional Officer Edwards; (4) Correctional Officer Bethea; (5) "John Doe and Jane Doe" Officers and Lieutenants on M-Unit; (6) Lieutenant Jolliff; (7) Lieutenant Hunter; (8) Sergeant Green; (9) Sergeant F. Webster; (10) Captain Drusel; (11) Captain Fitzgerald-Young; (12) Security Lieutenant Buggey; (13) Security Lieutenant Wade; (14) Security Lieutenant Hall; (15) Security Lieutenant Wright; (16) Security Lieutenant White; (17) Unit Manager Wychunis; (18) Major D. Mascellino; (19) Deputy Sipple; (20) Deputy Bradley; and (21) Deputy Hensley.[1]

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

As the basis for his claims, Mr. Gorrio alleges that on the afternoon of August 17, 2023, while he was proceeding to the concrete yard on M-Unit, another prisoner, Isaiah Hall, swung a lock on a rope, "striking [Mr. Gorrio] several times in the hand and head." Mr. Gorrio alleges that he "was obligated to defend himself with no available officer in the yard and no available officer monitoring the central control cameras" to prevent the altercation, which he alleges lasted "several minutes." Mr. Gorrio returned to M-Unit 45 minutes later "with visible blunt trauma, contusions, and lacerations to the head." He claims he reported the incident to "complacent unit officers" and requested medical attention and placement in administrative custody without success, and that Officer Bethea and Sergeant Green "indicated" to Mr. Gorrio that "this is the result of 'fight club' tend to your own injuries." When Mr. Gorrio brought his request to other officers on M-Unit, he received similar responses or was told, including by Officer Edwards, that "this is not our problem."

As a result, Mr. Gorrio "was forced to administer wound care and stitches to his head and wrap his broken hand"; he also received assistance from his cellmate, who allegedly used kitchen salt and sutures to close Mr. Gorrio's wounds. Mr. Gorrio contends that "the chain-of-command on M-Unit and . . . perfunctory Unit Manager Wychunis completely disregarded their official duties for a period of two (2) days" by failing to administer medical care. In that regard, he explains that he "filed request slip documentation" to Unit Manager Wychunis on the date of the incident, but that Mr. Wychunis "failed to act reasonably or in a timely manner." Mr. Gorrio further notes that SCI Phoenix is equipped with security cameras for purposes of monitoring inmates, including cameras located in the control center of the unit, the security department, and central control.

Mr. Gorrio alleges that he was unaware of "fight club" prior to the August 17 incident with Mr. Hall, but that between August 17 and August 19, he was informed by Officers Shorter, Bethea,

3

Green, Edwards, and other John or Jane Does officers on M-Unit that the rules of the fight club were as follows:

> A. No snitching; B. Fight to the death, or til the other prisoner is not moving; C. No medical attention, tend to your own injuries; and D. the winner of each match will receive a $7,000.00 Cash App to a location of their choosing.

The rules were allegedly posted on M-Unit during this two-day period. The Third Amended Complaint implies that Mr. Gorrio was pressured by these officers to join the "fight club" and that he believed he had no other option but to do so.

Accordingly, after the August 17 incident, Mr. Gorrio returned to the concrete yard with a "homemade knife" and a "master padlock on a rope," and engaged Mr. Hall.[2] During the altercation, Mr. Gorrio was stabbed in the head and sustained a fractured left hand; he also sustained mental, emotional and psychological injuries including post-traumatic stress disorder, depression, anxiety, flashbacks, and night terrors. After a few minutes of fighting, unidentified officers broke up the fight and took Mr. Gorrio and Mr. Hall for medical treatment. Mr. Gorrio was then taken to a hospital where he received a cast for his left hand and staples in his head. When Mr. Gorrio returned to SCI Phoenix, he was placed under medical observation for two days and then transferred to the Restricted Housing Unit ("RHU") to serve disciplinary time.

Mr. Gorrio alleges that all of the officials on M-Unit involved in "fight club" — whom he identified as Defendants Officer Shorter, Officer Bethea, Sergeant Green, Officer Edwards, and John or Jane Doe officers on M-Unit—along with Security Department officials, specifically, Defendants Captain Drusel, Captain Fitzgerald-Young, Lieutenant Jolliff, Lieutenant Hunter, Security Lieutenant Hall, Security Lieutenant Wade, Security Lieutenant Buggey, Security

---

[2] A declaration of another inmate, Alphonso Newsuan, that is attached as an exhibit to the Third Amended Complaint reports that this second altercation between Mr. Gorrio and Mr. Hall occurred on August 18, 2023.

4

Lieutenant Wright, and Security Lieutenant White, were "negligent in their duties in the supervision of security cameras, in providing care, custody, and control at SCI Phoenix . . . [and] in ensuring a safe and secure living environment." Mr. Gorrio adds that Superintendant Terra allegedly "failed to properly train and instruct such officials."

Mr. Gorrio raises claims for:[3] (A) "deliberate indifference to safety" based on a failure to intervene; (B) "deliberate indifference to health care" based on delayed medical care for his injuries; (C) "failure to protect" based on reckless disregard for his safety; (D) "Respondeat Superior" for knowingly participating "in constitutional violations" and failing "to remedy the wrong" after the violations were reported; (E) intentional infliction of emotional distress; (F) "negligence, gross negligence, contributory negligence and negligence per se"; (G) "breach of contract, breach of fiduciary duties, and breach of the covenant of good faith."[4] He seeks damages.

## LEGAL STANDARD

Because Mr. Gorrio is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Third Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint

---

[3] In reciting his claims, Mr. Gorrio failed to associate Unit Manager Wychunis and the Doe Defendants with any particular claim. The most logical interpretation of the Third Amended Complaint is that this was an oversight on Mr. Gorrio's part because the remainder of the Third Amended Complaint evinces his intention to assert all of the claims against all of the defendants.

[4] To the extent Mr. Gorrio intends to bring claims pursuant to the Pennsylvania Constitution, which he invokes in the recitation of his state claims, any such claims are dismissed because there is no legal basis for a damages action under the Pennsylvania Constitution. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

5

contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Gorrio is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## DISCUSSION

### A. Section 1983 Claims

Mr. Gorrio asserts his constitutional claims pursuant to § 1983, a vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

"Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on*

*other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[5] *Id.*

### 1. Failure to Protect and Failure to Intervene

Mr. Gorrio brings claims for "deliberate indifference to safety," which are essentially failure to intervene claims, as well as claims for failure to protect. Prison officials have a duty to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). In that regard, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury

---

[5] Official capacity claims are indistinguishable from claims against the governmental entity that employs the defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, Section 1983 claims against the individual defendants here—all of whom appear to be employed by the DOC—are really claims against the DOC, which is shielded from Section 1983 suits by Eleventh Amendment immunity and is not considered a "person" subject to liability under Section 1983. *See also Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of Section 1983). Accordingly, all claims asserted against the defendants in their official capacity will again be dismissed with prejudice. *See Gorrio*, 2024 WL 169566, at *2 n.2. The Court addresses Mr. Gorrio's damages claims against the defendants in their individual capacities.

suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state a plausible failure to protect claim, Mr. Gorrio must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See id.*; *Hamilton*, 117 F.3d at 746. Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). Mr. Gorrio must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id.* at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id.* at 125. A prison officer's failure to intervene can serve as a basis for Eighth Amendment liability under Section 1983 if the officer "had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651.

The crux of Mr. Gorrio's Third Amended Complaint is that the officers on M-Unit, specifically, Officers Shorter, Bethea, Green, Edwards, and other John or Jane Does officers, were running a "fight club" on M-Unit through which they encouraged inmates to seriously harm each other for money and that, as a result of this fight club, Mr. Gorrio was attacked by another inmate and then encouraged to initiate his own attack, which he did because he believed he had no other choice. He suggests that, despite the presence of cameras that would have allowed officers on M-Unit to identify inmate violence, the officers promoting "fight club," consistent with its rules, either ignored inmate fighting or chose to let it proceed until serious harm occurred, which happened when Mr. Hall attacked Mr. Gorrio on August 17.

These allegations taken as true are sufficient at this early stage of the litigation to support an inference that Officers Shorter, Bethea, Green, Edwards, and John or Jane Does officers on M-Unit on duty August 17 through 19, were deliberately indifferent to Mr. Gorrio's safety by promoting inmates to fight each other and deliberately failing to intervene when they did. *See McClain v. Carney*, No. 23-4012, 2024 WL 113761, at *10 (E.D. Pa. Jan. 10, 2024) ("If, as Mr. McClain alleges, Defendants Carter and Hawkins offered other inmates $100 in commissary to stab Mr. McClain, that conduct would amount to deliberate indifference to his safety."); *Smolen v. Brown*, No. 18-7621, 2023 WL 6199094, at *9 (S.D.N.Y. Sept. 22, 2023) ("Intentionally exposing an inmate to the risk of harm with no penological purpose is indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm the inmate at worst, thus constituting cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution." (internal quotations and alterations omitted)).

On the other hand, Mr. Gorrio has not alleged an adequate basis for a failure to protect or failure to intervene claim against the remaining defendants: Superintendent Terra, Lieutenant Jolliff, Lieutenant Hunter, Sergeant Webster, Captain Drusel, Captain Fitzgerald-Young, Security Lieutenant Buggey, Security Lieutenant Wade, Security Lieutenant Hall, Security Lieutenant Wright, Security Lieutenant White, Unit Manager Wychunis, Major Mascellino, Deputy Sipple, Deputy Bradley, and Deputy Hensley. Many of these defendants appear to have been named because of their high-level positions in the facility or because of their presence in the relevant chain of command. There are no factual allegations suggesting that any of these defendants participated in, knew of, or had any reason to know of the "fight club" that was allegedly being run on M-Unit during the relevant two or three day period in August, which is fatal to Mr. Gorrio's claims against them. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005) ("While we

appreciate that the discovery process is designed to enable a plaintiff like Evancho to undercover evidence that may support the allegations set forth in a complaint, a court is not required to assume that a plaintiff can prove facts not alleged.").

Although Mr. Gorrio sent an inmate request to Unit Manager Wychunis on August 17, 2023, the date he was attacked by Mr. Hall in the yard, this lone allegation is insufficient to support an inference that Unit Manager Wychunis knowingly permitted "fight club" to continue in the short time frame between when the request was sent and when Mr. Gorrio subsequently attacked Mr. Hall, or that he knew of "fight club" at all. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (The plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals."). Accordingly, Mr. Gorrio has not stated a failure to protect claim or failure to intervene claim against these sixteen defendants. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho*, 423 F.3d at 354).

### 2. Deliberate Indifference to Medical Needs

Mr. Gorrio's claim of "deliberate indifference to health care" is essentially a claim for deliberate indifference to medical needs. To state a constitutional claim based on the failure to

10

provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. Similar to a failure to protect claim, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference in this context is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Mr. Gorrio alleges that when he returned to M-Unit after his first altercation with Mr. Hall when Mr. Gorrio showed signs of blunt force trauma, contusions, and lacerations to the head, he sought and was denied medical care for his injuries, allegedly because of the rules of "fight club." Specifically, Mr. Gorrio alleges Officer Bethea and Sergeant Green told him that "this is the result

11

of 'fight club' tend to your own injuries," that unidentified officers on M-Unit did not provide care despite his requests or use of the in-cell call button, and that Officer Edwards stated, "this is not our problem." These allegations support an inference that Officer Bethea, Sergeant Green, Officer Edwards, and John and/or Jane Doe officers were aware that Mr. Gorrio had a need for medical care to treat his obvious injuries but that they declined to provide it because of the rules of "fight club." Accordingly, Mr. Gorrio may proceed on his deliberate indifference to medical needs claims against these defendants.

However, Mr. Gorrio has not alleged a deliberate indifference to medical needs claim against the remaining defendants. He does not allege that the defendants were aware of what medical care he required, when they were so aware, and how, if at all, any such awareness gives rise to an inference that the defendants were deliberately indifferent to his medical needs. Although Mr. Gorrio alleges that he contacted Unit Manager Wychunis after the August 17 incident by submitting a request to be placed in administrative custody, this allegation is insufficient to state a deliberate indifference to medical needs claim against Unit Manager Wychunis for the reasons stated above as to Mr. Gorrio's failure to protect and failure to intervene claims. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### 3. "Respondeat Superior"

Mr. Gorrio brings claims he characterizes as "Respondeat Superior" based on allegations that the defendants "'knowingly and intentionally' participated in constitutional violations and failed to remedy the wrong successively after reporting the occurrence of such violations, resulting

in violations of the Eighth Amendment." As noted above, however, an individual is not liable under Section 1983 based on the actions of others. Rather, a plaintiff must allege that each defendant participated in the alleged constitutional violations to state a claim. Mr. Gorrio's "Respondeat Superior" claim is therefore either a nullity (because it improperly seeks to impose liability on defendants based on the acts of others) or a legal conclusion that duplicates his other Eighth Amendment claims, which is entitled to no weight in determining whether those claims are plausible. *See Iqbal*, 556 U.S. at 676 (explaining that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). Accordingly, the "Respondeat Superior" claims are dismissed.

## B. State Law Claims

Mr. Gorrio brings assorted state law claims generally sounding in tort and contract law. None of these claims are plausible.

### 1. Contract and Fiduciary Duty-Based Claims

Nothing in the Third Amended Complaint provides any factual basis for a breach of contract, breach of fiduciary duties, or breach of the duty of good faith claims because Mr. Gorrio has not alleged any relevant contractual or fiduciary relationships. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) ("It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages"); *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020) ("To prevail on [a] breach of fiduciary duty claims, [a plaintiff is] required to prove the following elements: the existence of a fiduciary relationship between [the parties], that [the defendant] negligently or intentionally failed to act in good faith and solely for [the plaintiff's] benefit, and that [the plaintiff] suffered an injury caused by [the defendant's] breach of his

13

fiduciary duty."); *see also Short v. Adams*, No. 17-4544, 2019 WL 331679, at *9 (E.D. Pa. Jan. 25, 2019) (dismissing state law claims based on conditions at a halfway house, including claims for breach of contract and breach of fiduciary duty, where plaintiff failed to allege the existence of a contract or fiduciary relationship); *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) ("In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly plead the elements of a claim of breach of contract."). Indeed, the Court rejected these claims when screening Mr. Gorrio's first iteration of this lawsuit. *Gorrio*, 2023 WL 8373167, at *7.

### 2. Tort Claims

Nor may Mr. Gorrio proceed on his tort claims sounding in negligence or intentional infliction of emotional distress. By statute, Pennsylvania law provides agencies, officials and employees of the Commonwealth acting in the scope of their duties—such as the defendants in this case while they were on duty in M-Unit—with sovereign immunity from damages claims subject to exceptions not applicable here. *See* 1 Pa. Cons. Stat. § 2310 (establishing immunity for Commonwealth officials and employees); 42 Pa. Cons. Stat. § 8521 (limiting waiver of immunity to specific exceptions); *id.* § 8522 (setting forth limited exceptions); *see also Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Commw. Ct. 2006) ("Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages."). Further, "[u]nlike a municipal officer who is not immune from suit . . . for harm caused by willful misconduct, 42 Pa. Cons. Stat. § 8550, a state officer is shielded from liability for intentional torts committed while acting within the scope of his duties." *Bracey v. Betancourt*, No. 20-6205, 2021 WL 5112246, at *7 (E.D. Pa. Nov. 3, 2021); *see also Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (*per curiam*) ("State sovereign immunity bars these suits against the Commonwealth and its employees acting within the scope of their

duties, as the PSP employees were, and the limited negligence exceptions to sovereign immunity do not apply as Poteat alleged only intentional torts."); *Kidd v. Pennsylvania*, 37 F. App'x 588, 592 n.3 (3d Cir. 2002) (summarily dismissing intentional infliction of emotional distress claim because "[t]he Commonwealth, it subdivisions, and its employees acting within the scope of employment enjoy Eleventh Amendment immunity in federal court. The Pennsylvania legislature has not chosen to waive this immunity for intentional torts." (citation omitted)). Accordingly, Mr. Gorrio may not proceed on his state tort claims.

## CONCLUSION

For the foregoing reasons, the Court dismisses Mr. Gorrio's Third Amended Complaint with the exception of the following claims: (1) failure to protect and failure to intervene claims against Officer Shorter, Officer Bethea, Sergeant Green, Officer Edwards, and John or Jane Does officers on M-Unit on duty August 17 through 19, 2023, in their individual capacities; and (2) deliberate indifference to serious medical needs claims against Officer Bethea, Sergeant Green, Officer Edwards, and John and/or Jane Doe officers on duty on August 17, 2023, in their individual capacities. Mr. Gorrio's dismissed claims will be dismissed with prejudice because the Court concludes that further attempts at amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se prisoner would be futile when prisoner "already had two chances to tell his story"). An appropriate Order follows, which directs service of Mr. Gorrio's remaining claims.

BY THE COURT:

_/s/ Gene E.K. Pratter_
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**