## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL GORRIO** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 23-4807** |
| | : | |
| **CORRECTIONAL OFFICER** | : | |
| **SHORTER,** *et al.* | : | |

**McHUGH, J.**                                                          **March 2, 2026**

### MEMORANDUM

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff Michael Gorrio

brings this suit against SCI-Phoenix correctional officers, asserting that the officers violated his

Eighth Amendment rights by acting with deliberate indifference to his serious medical needs and

failing to protect him by recruiting him to participate in fights with other prisoners. Defendants

Shorter, Betha, and Green move for summary judgment, asserting both that Mr. Gorrio failed to

properly exhaust his claims and that the claims fail on the merits. All Defendants are represented

by the same counsel, and Defendants Bueno, Hughes, Long, Shaw, Smith, Spires, and Webster

separately move to dismiss for failure to exhaust, incorporating the arguments of their fellow

officers. ECF 52 at 2.[1] For his part, Mr. Gorrio incorporates his answer to the motion for summary

judgment as his answer to the motion to dismiss. *See* ECF 54. The parties have been advised that

I will address the issue of exhaustion as the preliminary finder of fact, ECF 46, and all their

submissions have been considered. Because the record establishes that Mr. Gorrio did not

administratively exhaust his claims as required by the Prison Litigation Reform Act, I will dismiss.

---

[1] The Third Amended Complaint also names an Officer Edwards, but SCI-Phoenix has no record of employing someone with that name during the relevant times. Mr. Gorrio provided no further information to identify this individual. *See* Mot. for Summ. J. at 4, ECF 34. But if another defendant exists, the same analysis as to exhaustion would apply.

I.      **Relevant Background**

In 2023, *pro se* Plaintiff Michael Gorrio was incarcerated at SCI-Phoenix.[2]   Third Am. Compl. (TAC) ¶¶ 7, 9, ECF 14.   Plaintiff's claims arise out of a "fight club" that purportedly existed at SCI-Phoenix when he was incarcerated there.  *Id*. at ¶ 24.

### A. The alleged "fight club" incidents.

According to Mr. Gorrio, in mid-August 2023, Correctional Officers Green and Bethea approached him to discuss a fight club they operated out of the prison.  Gorrio Dep. at 22:8–18, ECF 34-1.  The Officers explained that the rules of fight club included "no snitching," tending to your own injuries, and "fight till you can't fight anymore or till the other prisoner is dead."  *Id.* at 23:2–7.  The winner of fight club would receive $7,000.  *Id.*  The Officers purportedly elected him as one of the fighters.  *Id.* 23:8–24:2.

On August 17, 2023, Mr. Gorrio was allegedly involved in a physical fight in the yard with fellow inmate Isaiah Hall, as part of the purported fight club.  Gorrio Dep. at 10:7–21, 23:8–25.[3] Gorrio asserts that after he entered the yard in M Unit, Mr. Hall approached him and started swinging a lock at him.  *Id*. at 13:19–25.  During the fight, Officers Green and Bethea stepped into the yard and observed the fight, but did not intervene or break it up.  *Id*. at 14:23–25.  Once the fight ended, Mr. Gorrio contends that he remained bleeding in the yard for forty-five minutes with several visible injuries, including a broken hand and an open gash to his head.  *Id*. at 19:6–14.  Mr. Gorrio remembers requesting medical attention for these injuries, but the officers "did not care,"

---

[2] Plaintiff is currently incarcerated at SCI-Pinegrove.  TAC ¶¶ 7, 9, ECF 14.  All the events at issue here took place at SCI-Phoenix.

[3] All of the details regarding the August 17 incident are known solely from Plaintiff's allegations; Defendants assert that no such fight occurred.  *See* Mot. for Summ. J. at 13, ECF 34.  As discussed in detail below, there are notable inconsistencies among Mr. Gorrio's filings as well as his deposition.

leaving him in the care of his cellmate.  *Id.* at 33:1–6, 34:7–25, 35:21–25, 36:1–25.  There is no record at the prison corroborating that any fight involving Mr. Gorrio occurred on August 17.

Two days later, on August 19, 2023, Mr. Gorrio was involved in a fight with Hall.  Gorrio Dep. at 43–47.  Mr. Gorrio arrived in the yard and waited next to the door, out of sight of anyone arriving.  Video 8:22:58–8:23:23, ECF 34-12.  When Hall entered the yard, Mr. Gorrio ran up to him and they began to fight.  *Id.* at 8:23:23.  Ten seconds after the fight began, prison staff entered the yard, attempting to separate the men and clear other inmates from the yard.  *Id.* at 8:23:23–8:25:36. At one point during the fight, Hall attempted to flee across the yard, but Gorrio pursued him, and they re-engaged.  *Id.* at 8:24:38–59. The video suggests that Mr. Gorrio was lying in wait for Hall, and none of the officers present appeared to be facilitating the continuation of the fight.

The full altercation lasted about two minutes until staff successfully separated Gorrio and Hall, deploying oleoresin capsicum (pepper spray).  *Id*. at 8:23:23–8:25:36. Three weapons were recovered from the incident: two weapons sharpened to a point and a lock attached to a band. Employee Rep. at 3, ECF 34-5.  Mr. Gorrio was taken for medical care at the prison and then transported to the hospital to treat his injuries, which included stab wounds to the top of his head and left scapular area and abrasions under his left eye and forehead.  Med. Incident Rep., ECF 34-6.  Plaintiff received a misconduct for his participation in the fight, and was found guilty of assault, fighting, refusing to obey an order, and possession of contraband at a disciplinary hearing held on August 22, 2023.  Disciplinary Hrg. Rep., ECF 34-9.  Unlike the incident alleged to have occurred on August 17, there is documentation, including video, *see* ECF 34-12, of the altercation on August 19.

**B. The grievance history.**

According to Mr. Gorrio, he filed a grievance complaint about the first fight that took place on August 17.  Gorrio Dep. at 64:16–20; Aug. 17 Grievance Form, ECF 40 at 11 (dating the grievance as submitted on August 24); Opp'n to Summ. J. ¶ 2, ECF 40 (claiming to have filed the grievance on August 19).  According to prison records and personnel, such a complaint was never received by the Facility Grievance Coordinator.  Orlando Decl. ¶ 14, ECF 34-2; Grievance Hist. at 1, ECF 34-4.

Prison records show that Mr. Gorrio did file a grievance complaint related to the August 19 fight on August 23, which was docketed at Grievance Number 1049079.  Orlando Decl. ¶ 12; Aug. 19 Grievance Compl. at 1, ECF 34-3.  The Grievance Officer denied that grievance on September 28.  Initial Rev. Resp., ECF 34-3 at 5–6.  Mr. Gorrio appealed to the Facility Manager, who upheld the denial on October 23.  F.M. Appeal, ECF 42-1; F.M. Appeal Resp., ECF 34-3 at 7.  Mr. Gorrio did not appeal this denial to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  Orlando Decl. ¶ 16; Grievance History at 1; Gorrio Dep. at 71:24–73:9.

Mr. Gorrio subsequently filed suit in federal court, asserting claims related to the two fight club incidents as well as a host of other claims, most of which were dismissed by my predecessor in this action, who also severed these claims.  ECF 1 ¶ 2;[4] *Gorrio v. Terra*, No. 23-4366, 2023 WL 8373167 (E.D. Pa. Dec. 4, 2023).  After three amended complaints involving multiple unidentified defendants and many requests for extension of time from Plaintiff, resulting in delays in service, the case is now in a posture to proceed.

---

[4] Until May 2024, this matter was on the docket of the late Judge Pratter.

## II.     Standard of Review

Pursuant to *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018), I gave notice to the parties that I would consider exhaustion in my role as a fact finder, and invited any further submissions. *Paladino* Order, ECF 46.

## III.    Discussion

Under the Prison Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under § 1983 or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).  Exhaustion is mandatory and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Proper exhaustion requires such an individual to "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit, including compliance with any grievance deadlines. *See Woodford*, 548 U.S. at 83–84, 88 (holding that an incarcerated individual cannot satisfy the PLRA's exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal).  As "a non-jurisdictional prerequisite" to an incarcerated individual bringing suit, exhaustion therefore "constitutes a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (citation and internal quotation omitted); *see also Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (holding that "exhaustion constitutes a preliminary issue for which no right to a jury trial exists").

The PLRA only "requires exhaustion of such administrative remedies 'as are available.'" *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (quoting PLRA, 42 U.S.C. § 1997e(a)); *see also*

*Ross*, 578 U.S. at 643. When an administrative remedy is unavailable, the court will treat the claim as administratively exhausted and the claim may proceed in federal court. A prison grievance policy may be "unavailable" in certain circumstances, such as when it "operates as a simple dead end, . . . where it is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019); *Ross*, 578 U.S. at 643–45 (finding that an administrative procedure becomes unavailable when (1) "officers are unable or consistently unwilling to provide any relief to aggrieved inmates," (2) "a mechanism for relief exists but no ordinary prisoner can navigate it", and/or (3) "prison administrators thwart inmates from taking advantage of a process through machination, misrepresentation, or intimidation."); *see also Robinson*, 831 F.3d at 154–55 (finding that the petitioner "pursued his claim correctly at every step," but the prison's failure to respond to his grievance effectively "rendered its administrative remedies unavailable" and thus administratively exhausted).

For incarcerated individuals in Pennsylvania state facilities, the Pennsylvania Department of Corrections (DOC) has implemented an Official Inmate Grievance System that provides a three-step administrative grievance process that inmates must exhaust prior to suing in federal court. *See Rice v. Kernizan*, No. 24-1501, 2025 WL 242834, at *3 (E.D. Pa. Jan. 17, 2025) (Hodge, J.) (detailing the three-step Pennsylvania DOC Grievance process). This system is governed by Administrative Directive 804. DC-ADM 804 (2015).[5] Pursuant to DC-ADM 804, an inmate has fifteen working days after an incident to file a grievance report, thereby initiating the Grievance Process. *Id.* § (1)(A)(8). Once the complaint is entered into the Automated Grievance Tracking

---

[5]  Available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf.

System, the assigned grievance officer has fifteen working days to respond. *Id.* § (1)(X)(5)(g). The grievance officer assigned to the compliant may request a 10-day extension from the Facility Grievance Coordinator. *Id.* § (1)(C)(5)(h). Second, if an inmate disagrees with the decision, they can file a first-level appeal with the Facility Manager, who has fifteen working days to respond. *Id.* § (2)(A)(2). Third, the inmate can appeal the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). *Id.* § 2(B)(1). SOIGA must issue a decision within thirty working days from receipt. *Id.* § (2)(B)(2)(a)(1). An inmate has administratively exhausted his claim only after completing all three steps.

If the prison fails to follow the procedural rules of the grievance system, the administrative remedies are deemed unavailable, and a plaintiff may file suit in federal court without completing all three steps. *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d. Cir. 2016).

### A. Plaintiff failed to exhaust his administrative remedies as to his August 17 claim.

It is undisputed that the events alleged to have occurred on August 17, a fight and subsequent failure to provide medical care claims, were not the subject of a docketed grievance complaint. Defendants preliminarily contend that this is because no such events took place on that date. There is substantial force to this argument, as there are ample records from the August 19 incident, including video, but none whatsoever for August 17. If there were an illicit fight club that prison officials wished to cover up, why would they document the events of August 19 and preserve video footage, but erase any record of the 17th? The August 19 grievance contained allegations of a similar nature pertaining to the purported "fight club," and the prison responded to both that grievance and its appeal. Indeed, many of Mr. Gorrio's other grievances contain equally or more serious claims than the August 17 grievance and have been acknowledged and responded to by prison officials. Courts must exercise caution in accepting the lack of official

records as necessarily proving that an event did not happen, but here there is a logical inconsistency at the heart of Plaintiff's position. And other undisputed evidence undercuts Mr. Gorrio's narrative. According to him, he suffered a "broken hand" from the August 17 incident and was denied medical care. TAC ¶ 18; Gorrio Dep. at 18:10–11. But the video for August 19 shows him lying in wait for another prisoner and engaging in physical combat using both hands with no apparent limitation. This combination of facts supports the conclusion that nothing of note occurred on August 17, which in turn explains the absence of a grievance.

Assuming the truth of Plaintiff's representations about August 17, he still does not excuse his failure to file a grievance. Mr. Gorrio alleges in a conclusory fashion that he properly filed the grievance and that the grievance officers simply failed to process his form, thereby rendering the grievance process "unavailable." The DOC asserts that they never received such a grievance complaint. Orlando Decl. ¶ 17.

A grievance form has four copies, including the top "golden rod" copy which the inmate keeps, and three carbon copies (white, canary yellow, and pink), which are submitted to the prison. *See* ECF 34-3; *Cisne v. Haag*, No. 19-270, 2021 WL 4085507, at *2 (W.D. Pa. July 28, 2021), report and recommendation adopted, No. 19-270, 2021 WL 4078656 (W.D. Pa. Sept. 8, 2021) (explaining the color copy system). When a grievance is properly submitted, it is reviewed by an officer who assigns it a grievance tracking number and enters it into the Automated Inmate Grievance Tracking System. DC-ADM 804(1)(C)(1). If the grievance is determined to be properly submitted, it is accepted, and the pink slip carbon copy of the complaint form is returned to the inmate. *Id*. § (1)(C)(3). Significantly, if rejected upon receipt, the complaint is still entered into the System, but the complaint form is returned to the inmate with a Grievance Rejection Form explaining why the rejection occurred. *Id*. § (1)(C)(4).

8

Plaintiff claims he submitted a grievance form for the August 17 incident and attaches to his Opposition Memorandum a complaint he purportedly filed bearing a date of August 24. Gorrio Dep. at 64:16–20; Aug. 17 Grievance Form, ECF 40 at 13. Notably, the exhibit Mr. Gorrio submits is inconsistent with his opposition to the motion for summary judgment, where he claimed to have filed the grievance on August 19. *Compare* Opp'n to Summ. J. ¶ 2 (claiming to have filed the grievance on August 19), *with* Aug. 17 Grievance Form, ECF 40 at 13 (dating the grievance as August 24). Unlike the grievance complaint filed for the August 19 claim—which has a tracking number and is signed by the Grievance Officer—the August 17 complaint form does not have any indication of receipt and does not appear in the Grievance Tracking System. *See* Aug. 17 Grievance Form; Grievance Hist. at 1. The grievance as submitted to this Court does not appear to be a returned pink slip carbon copy, either, as the writing is not faded. After his initial attempt to file a grievance concerning August 17 was allegedly "ignored," Mr. Gorrio does not assert or point to any evidence that he attempted to file the grievance again within the 15-day window permitted. Nor could he credibly allege he would have been unable to do so, because of the unrelated grievance he lodged with officials on August 30. *See* Grievance History at 1.

Mr. Gorrio's documents, filings, and deposition are rife with contradictions, inconsistencies, and omissions. The purported August 17 grievance names Shorter, Bethea, and Green, but they are not associated with these claims until after Gorrio filed his third amended complaint. *See* ECF 15. Shorter was not even on duty that day. *See* Shift Roster, ECF 34-8. Mr. Gorrio did not contend that he filed any grievance pertaining to the August 17 fight until he nonspecifically alludes to it in his Third Amended Complaint. *See* TAC ¶ 14 ("Grievance No. 1049079 and other filed grievances received 'no response' and were both filed in accordance with DC-ADM 804 policy."). In his initial complaint in federal court, Mr. Gorrio lists several filed

grievances, including No. 1049079, and describes a failure to respond to another numbered grievance, but makes no mention of an August 17 grievance. *See* Initial Compl. ¶ 15. And while he presumably had the form in his possession, the grievance form itself was not included as an exhibit until his Opposition Memorandum, *see* ECF 40 at 13, after nearly two years of litigation.

During his time in DOC facilities, Mr. Gorrio has successfully filed over 110 grievance complaints. *See generally* Grievance Hist. At SCI-Phoenix specifically, Gorrio has filed at least thirty-four grievance complaints and appealed a significant number of denials. *Id.* at 1, 4. Thirteen SCI-Phoenix complaints were filed after the complaints at issue here, and two complaints were filed, received, and processed within a week of the purported August 24 complaint. This includes the grievance pertaining to the August 19 events, which was filed on August 23, and the pink copy returned to him the next day. *Id.* at 1. Mr. Gorrio himself asserts that he is "very versed with the [grievance] policy." Gorrio Dep. at 64:9–10. The record establishes that Mr. Gorrio was successfully able to navigate the grievance process, that SCI-Phoenix regularly processed and reviewed his complaints and appeals, and that Mr. Gorrio was not thwarted from exercising his right to use the grievance process.

To buttress his contention that he filed a grievance for August 17, Mr. Gorrio includes a copy of a Form DC-135A, which is an "Inmate's Request to Staff Member" form. *See* ECF 40 at 14. Addressed to Grievance Coordinator Orlando and dated September 11, 2023, the request inquires about the status of his August 17 grievance and failure to receive a pink copy. *Id.* Mr. Gorrio does not allege in the TAC or his Opposition to Summary Judgment that this Request Form was ever filed, nor that prison officials failed to respond. In his deposition, he says that he "tried writing to the grievance coordinator and she didn't respond, and then I wrote to the . . . superintendent . . . and they didn't respond." Gorrio Dep. at 65:3–10. Mr. Gorrio did not submit

to the Court a copy of this purported request to the superintendent, nor allege at any point in any litigation document that he filed such a request. *See also Paladino* Order, ECF 46 (requesting the parties "present any further pertinent material" pertaining to exhaustion).

The success of an argument claiming failure to exhaust "depends on the reliability of the Prison's recordkeeping system." *Paladino*, 885 F.3d at 211. The record supports the notion that the DC-ADM Grievance Process was readily available to Mr. Gorrio and prison officials have demonstrated that the SCI-Phoenix grievance and request processes were reliable. Mr. Gorrio's explanations appear untrustworthy, and I conclude that there was no exhaustion of any claim arising out of the purported events of August 17.

## B. Plaintiff failed to exhaust his administrative remedies as to his August 19 claim.

Mr. Gorrio did properly file a grievance as to the events of August 19, which he submitted on August 23 and was received by the Grievance Officer on August 24. Aug. 19 Grievance Compl., ECF 34-3. The initial deadline, counting fifteen working days, was September 14. On September 5, the Grievance Officer received a 10-day extension to respond from the Grievance Coordinator, extending the deadline for response to September 28. Initial Level Extension at 4, ECF 34-3. The Grievance Officer responded to Gorrio's complaint and denied relief on September 28, 2023, within the permitted time. Initial Rev. Resp., ECF 34-3 at 5–6. Mr. Gorrio properly appealed the Grievance Officer's decision to the Facility Manager on October 5, 2023.[6] F.M. Appeal, ECF 42-1 at 4. The deadline for response was October 26. The Facility Manager responded and denied relief on October 23. F.M. Appeal Resp., ECF 34-3 at 7. Mr. Gorrio did

---

[6] Mr. Gorrio asserts that he filed an appeal on September 23, 2023. Opp'n to Summ. J. ¶ 4. As explained below, the record clearly contradicts this assertion.

11

not appeal the Facility Manager decision to SOIGA, thereby failing to exhaust his administrative remedies.  Gorrio Dep. at 71:24–73:9.

Mr. Gorrio asserts that he did not need to make an appeal to SOIGA because the Facility Manager failed to respond to his first appeal in a timely manner.  Opp'n to Summ. J. ¶ 4.  This would render the grievance process unavailable, thereby waiving the exhaustion process.  *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) ("[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.").

Mr. Gorrio's timeliness argument is premised on his assertion that he filed his first appeal to the Facility Manager on September 23, 2023.  But this is plainly contradicted by the record.  The Grievance Officer's decision denying relief was issued September 28, 2023.  Initial Rev. Resp., ECF 34-3 at 5–6.  And any appeal to the Facility Manager that predates the issuance of a Grievance Officer decision is procedurally improper as a matter of law.  *See* DC-ADM 804(2)(A)(1)(b) ("The initial review response/rejection from the Facility Grievance Coordinator/designee must be received by the inmate before any appeal to the Facility Manager can be sought").  Additionally, Defendants have submitted a copy of Mr. Gorrio's appeal to the Facility Manager, which Mr. Gorrio signed and dated October 5, 2023, and is marked as having been received by the prison on October 6.  F.M. Appeal, ECF 42-1 at 4.  The Facility Manager's response was due fifteen working days later—on October 26, 2023.  The Facility Manager's October 23 response was therefore timely.  F.M. Appeal Resp., ECF 34-3 at 7.

In an apparent attempt to manufacture a factual dispute, Mr. Gorrio now submits as evidence a copy of his purported appeal, dated September 23, 2023.  Sept. 23 F.M. Appeal, ECF

12

40 at 11. This appeal is not marked as received and the date appears to be written over multiple times. *Id*. I cannot accept it as authentic, and give it no weight, while cautioning Mr. Gorrio that the precepts of Rule 11 of the Federal Rules of Civil Procedure apply with full force to *pro se* litigants as well as lawyers.

Based on the record before me, I do not credit Mr. Gorrio's contention that he filed an appeal on September 23. And even if I were to accept his position, any such appeal would be procedurally improper for having been filed before an initial decision. Therefore, the Facility Manager's response was timely, the grievance process was available to Mr. Gorrio, and Mr. Gorrio's failure to pursue his third administrative appeal to SOIGA is fatal to his claim.

## IV.  Conclusion

For the reasons set forth above, Defendants' motions will be granted, and this case dismissed for failure to exhaust.

<u>  /s/ Gerald Austin McHugh  </u>
United States District Judge

13